**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MICHAEL J. SANDERSON, JR.,

        Plaintiff,

 - v -               Civ. No. 9:14-CV-439
                    (BKS/DJS)

KEVIN GALLETTA, *County Jail Deputy, Osewego County Corr. Facility*; CHRISTY BUNCE, *County Jail Deputy, Oswego County Corr. Facility*; SGT. BENNETT, *Sergeant, Oswego County Corr. Facility*,

        Defendant.

**APPEARANCES:**        **OF COUNSEL:**

MICHAEL J. SANDERSON, JR.
Plaintiff, *Pro Se*
13-B-1248
Southport Correctional Facility
P.O. Box 2000
Pine City, New York 14871

OFFICER OF FRANK W. MILLER    FRANK W. MILLER, ESQ.
Attorney for Defendants
6575 Kirkville Road
E. Syracuse, New York 13057

**DANIEL J. STEWART**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

   Plaintiff initiated this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that on May 20, 2012, while incarcerated at the Oswego County Correctional Facility as a pre-trial detainee, the Defendants used excessive force against him and denied his requests for medical attention. Dkt. No. 1, Compl. Presently pending is Defendants' Motion for Summary Judgment, filed pursuant to Federal Rule of Civil Procedure 56, based solely on the affirmative defense that Plaintiff failed to

fully exhaust his available administrative remedies prior to bringing this action. Dkt. No. 50. Plaintiff opposes the Motion, Dkt. No. 57, and Defendants in turn filed a Reply, Dkt. No. 59. For the reasons that follow, the Court recommends that Defendants' Motion be **denied** and a hearing be scheduled to determine whether Plaintiff's failure to exhaust can be excused due to the unavailability of such remedies.

## I. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings,*

*Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. DISCUSSION

As noted above, Defendants' entire Motion rests on the affirmative defense that Plaintiff

failed to exhaust all his available administrative remedies prior to brining this action. Because there are diverging versions of the facts concerning Plaintiff's effort to exhaust, the Court will first review the applicable law and then discuss the arguments put forth by the parties.

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citations omitted). Exhaustion is similarly required even if the prisoner asserts futility as an excuse. *See Booth v. Churner*, 531 U.S. 731, 741 n.6 (2001) (refusing to "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise") (cited in *Marvin v. Goord*, 255 F.3d 40, 43 (2d Cir. 2001)). Accordingly, the exhaustion requirements apply even where the grievance process does not permit an award of money damages and the prisoner seeks only money damages, provided the grievance tribunal has the authority to take some responsive action. *See Thomas v. Wright,* 2002 WL 31309190, at *5 (N.D.N.Y. Oct. 11, 2002) (citing *Booth v. Churner*, 531 U.S. 731 (2001)).

Several courts, including this one, have held that there are situations where a defendant may be estopped from asserting this affirmative defense. *Croswell v. McCoy*, 2003 WL 962534, at *4 (N.D.N.Y. Mar. 11, 2003) (Sharpe, M.J.) *aff'd in unpublished opinion* No. 01-CV-547, Dkt. No. 50 (Hurd, J.); *Heath v. Saddlemire*, 2002 WL 31242204, at *4-5 (N.D.N.Y. Oct. 7, 2002) (Scullin, C.J.) (affirming report-recommendation and order in its entirety); *O'Connor v. Featherston*, 2002 WL

818085, at *2 (S.D.N.Y. Apr. 29, 2002) (collecting cases from various districts including the 5th and the 8th Circuit explicitly holding such exceptions to the PLRA exhaustion requirement). A prisoner may continue with suit despite non-exhaustion when

> (1) [the] inmate was led to believe by prison officials that his alleged incident was not a grievance matter and assured that his claims were otherwise investigated . . . (2) an inmate makes a reasonable attempt to exhaust his administrative remedies, especially where it is alleged that corrections officers failed to file the inmate's grievances or otherwise impeded or prevented his efforts . . . and (3) the . . . time to respond to the grievance has expired.

*O'Connor v. Featherston*, 2002 WL 818085, at *2 (S.D.N.Y. Apr. 29, 2002) (internal quotations and citations omitted).

Pertinent to the discussion herein, the Supreme Court has held that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) (cited in *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006). In accordance with New York's Minimum Standards and Regulations for Management of County Jails and Penitentiaries, the Oswego County Correctional Facility has put into place, and maintains, a formal inmate grievance program. N.Y. COMP. CODES R. & REGS. tit. 9, § 7032.1 *et seq*. As set forth in the Inmate Informational Handbook, the procedure at Oswego has four steps a prisoner must complete in order to be considered fully exhausted. Dkt. No. 50-3, Michael Benjamin Aff., dated Apr. 24, 2015, at ¶ 25 & Exs. M & N. First, within five days of the event giving rise to a grievance, the prisoner must present a written complaint, on a form provided, and submit it to the Housing Unit Officer for informal resolution. *Id*. at ¶ 25(a) & Exs. M & N. If after one day it is determined that the Housing Unit Officer lacks the power or authority to resolve the complaint, the inmate's complaint becomes an official grievance and is entered into the grievance system and forwarded to the Facility Grievance Coordinator for investigation. *Id*. at ¶¶ 25(a) & (b). This constitutes the second step in the grievance procedure at Oswego. After conducting an investigation,

the Grievance Coordinator will issue a written decision within five business days of the date the grievance was filed. *Id*. at ¶ 25(b) & Exs. M & N. If that decision is not satisfactory to the inmate, he will have two business days to appeal the decision by checking the appropriate box, thus advancing the grievance to the third step, the Jail Administrator. *Id*. at ¶¶ 25(b) & (c) & Exs. M & N. Within five business days of receipt of that appeal, the Jail Administrator, or his/her designee, will issue a written decision. *Id*. at ¶ 25(c) & Exs. M & N. If the inmate is still not satisfied with the result, he has one more step to complete: an appeal to the Citizens Policy and Complaint Review Council ("CPCRC") of the New York State Commission of Correction. *Id*. at ¶ 25(d) & Exs. M & N. The CPCRC will issue a decision in writing within forty-five days. *Id*.

Sanderson asserts that on May 20, 2012, the Defendants used excessive force against him. Indeed, a documented use of force was utilized that day, and the crux of this lawsuit concerns the constitutionality of the amount of force that was used and whether Plaintiff was provided with adequate medical care for the injuries he allegedly received as a result of such use of force. It is Plaintiff's contention, as provided under oath, that the day following this incident, he requested and filled out a grievance form and provided it to Officer Doerfler,[1] the Housing Unit Officer on duty that day. Dkt. No. 51, Bryan Georgiady, Esq., Decl., Ex. E, Michael J. Sanderson Dep. Tr., dated Mar. 13, 2015, at pp. 159-60. After Officer Doerfler relayed that he could not informally solve the problem, Plaintiff asked that the grievance be sent to the Facility Grievance Coordinator. *Id*. After waiting approximately four or five days and hearing no response, Plaintiff filed another grievance, this time with Officer Woods,[2] the Housing Unit Officer on duty at that time. *Id*. at pp. 160-62.

---

[1] Officer Doerfler is not named as a defendant in this action.

[2] Officer Woods is not named as a defendant in this action.

Officer Woods allegedly told Plaintiff that he could not handle the issue; but instead of asking it to be sent to the Facility Grievance Coordinator, Plaintiff asked for the form back and mailed it directly to Mr. Stafford, the Jail Administrator. *Id*. Plaintiff did not receive any response, prompting him to write more letters to Mr. Stafford, but those too went unanswered. *Id*. Plaintiff has not provided the Court with any copies of the allegedly submitted grievances or letters.

Defendants maintain that there is no record of having received any grievance from Plaintiff regarding the incident at issue in this lawsuit. Benjamin Aff. at ¶ 30. But, even crediting Plaintiff's version of events, Defendants posit that Plaintiff's failure to nevertheless pursue his grievance(s) through each and every step set forth in the grievance process, to wit, an appeal to the CPCRC, is fatal to his claim. *See generally* Dkt. No. 50-2, Defs.' Mem. of Law. It is the Defendants' position that despite not receiving responses to the two prior grievances filed, not to mention the unspecified number of letters sent directly to Mr. Stafford, that Plaintiff nevertheless had the obligation under the PLRA to pursue those non-responses to the highest level of review in order to constitute full exhaustion. In support of this postulation, Defendants ask the Court to take notice of various cases which place the onus on the prisoners to construe a non-response as a denial and continue to appeal until the last possible step. *Id*. at pp. 4-10. Defendants' argument is, however, misplaced and ignores the primary basis behind the reasoning of the cited cases, namely, the fact that the inmate grievance programs provided to prisoners in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and/or the Federal Bureau of Prisons ("BOP") are governed by statutes and regulations which <u>specifically</u> put that burden upon the prisoner. *See* N.Y. COMP. CODES R. & REGS. tit. 7, § 701.6(g)(2) (listing various procedural safeguards for state prisoners utilizing the inmate grievance program, including, as pertinent here, the caveat that

"matters not decided within the time limits may be appealed to the next step"); 28 C.F.R. § 542.18 ("If the inmate does not receive a response within the time allotted . . . the inmate may consider the absence of a response to be a denial at that level."). Thus, both federal and New York State prisoners are expected, in the absence of a response, to continue their appeals to the very last stage. No such onus is included nor implied in the Minimum Standards and Regulations for Management of County Jails and Penitentiaries nor in the Oswego County Correctional Facility's grievance procedures. *See Jones v. Bock*, 549 U.S. 199, 218 (2007) (emphasizing that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"); *see generally Malik v. City of New York*, 2012 WL 3345317 (S.D.N.Y. Aug. 15, 2012) (acknowledging a host of cases that have found administrative remedies to be unavailable when prison officials fail to respond to a prisoner's grievance, but distinguishing those cases from situations where the grievance policy explicitly places the burden on the inmate to continue in his appeal when no official response is forthcoming). And the Court is not swayed that in the absence of such directive, Plaintiff was on notice that the failure to receive responses to his grievances should have been taken as a denial at each stage and therefore he had the obligation to continue his appeals. Indeed, if I was to take Plaintiff's version of events as true, I would find that Plaintiff's remedies were effectively unavailable to him as he was apparently stymied in his multiple efforts to present his grievance to prison personnel.

Yet, the Court cannot look past the contention that the Oswego facility has no record of Plaintiff's attempts to grieve these matters through the facility grievance program, a task Plaintiff was able to accomplish on multiple occasions when he was in the custody of the Oswego County Correctional Facility. Benjamin Aff. at ¶¶ 30-36. In this regard, I find there to be an issue of fact

and credibility as it pertains to Plaintiff's efforts to grieve this matter and that such issues cannot be resolved on the record presently before the Court. Should the facts be found to exist as Plaintiff presents them, then it seem that Plaintiff's administrative remedies were indeed unavailable to him and therefore his failure to exhaust should be excused. If, however, it is determined that no such efforts were rendered by Plaintiff, then the affirmative defense would stand and should result in dismissal of this action.

**WHEREFORE**, based upon the discussion above, it is hereby

**RECOMMENDED** that Defendants' Motion for Summary Judgment (Dkt. No. 50) be **DENIED** and this matter be set down for a hearing so that it can be determined whether Plaintiff's administrative remedies were available to him; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: April 8, 2016
        Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge